UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ENA EDOUARD,<br><br>*Plaintiff*,<br><br>v.<br><br>CONCERT HEALTH, INC., et al.,<br><br>*Defendants*. | Case No. 3:25-CV-01786 (KAD)<br><br>August 27, 2026 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 26, 28, 30)**

Kari A. Dooley, United States District Judge:

On October 22, 2025, Ena Edouard ("Plaintiff") filed a Complaint against her former employer, Concert Health Inc. ("Concert Health"), and Concert Health employees Dannie Tillotson Hayden, Gheetu Johny, Robyn Pendleton Carter, and Mecaila Tolone-Smiley. Compl., ECF No. 1. On December 10, 2025, Plaintiff filed an Amended Complaint against the same parties alleging Title VII and Section 1981 retaliation, defamation, violations of the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. §§ 11131 *et seq*., interference with employment, invasion of privacy, and antitrust claims. *See* Am. Compl., ECF No. 23. Defendants Concert Health, Mecaila Tolone-Smiley, and Gheetu Johny each filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mots. to Dismiss, ECF Nos. 26, 28, 30. Defendants Tolone-Smiley and Johny further seek dismissal for lack of personal jurisdiction. For the reasons set forth below, the Motions to Dismiss, ECF Nos. 26, 28, 30, are **GRANTED**.

**Allegations**

The Complaint is largely conclusory in nature and contains pointed and significant accusations of wrongdoing. The Court sets forth here, only the factual allegations offered in support of Plaintiff's claims.[1] Plaintiff was employed by Concert Health from approximately September 2024 to February 2025 as a Behavioral Healthcare Manager. Am. Compl., ECF No. 23 at 3; *see also* Concert Health Mot. to Dismiss, ECF No. 26-1 at 2 (identifying Plaintiff's start date as September 2024); Compl., ECF No. 1 at 2; Ex. A, ECF No. 49-1 at 3. Concert Health is a private behavioral health organization. Compl., ECF No. 1 at 1; Concert Health Mot. to Dismiss, ECF No. 26-1 at 2. Defendants Johny and Tolone-Smiley were employed by Concert Health during the relevant period and Ms. Johny was Plaintiff's supervisor.[2] Am. Compl., ECF No. 23 at 2, 4, 6, 8–9; Tolone-Smiley Mot. to Dismiss, ECF No. 28-1 at 3; Johny Mot. to Dismiss, ECF No. 30-1 at 3.

Plaintiff alleges Defendants created false misconduct allegations against her and that they engaged in "discriminatory favoritism" by elevating more tenured clinicians while discrediting, isolating, and targeting Plaintiff. Am. Compl., ECF No. 23 at 2. Defendants also made false and disparaging statements about Plaintiff having committed a "fraud," thus damaging her professional reputation. *Id*. On February 21, 2025, Plaintiff submitted an incident report regarding unethical conduct, improper handling of patient records, and suspected tampering with Plaintiff's files. *Id*.

[1] Although the Amended Complaint, ECF No. 23, supersedes the Original Complaint, ECF No. 1, the Court, where indicated, relies on the Original Complaint, ECF No. 1, and Defendants' Motions to Dismiss, ECF Nos. 26, 28, 30, which cite thereto, for necessary context. *See Royal Canin USA, Inc. v. Wullschleger*, 604 U.S. 22, 29 (2025) ("An amended complaint, the court reasoned, [supersedes] an original complaint and renders the original complaint without legal effect." (internal quotation and citation omitted)); *Dluhos v. Floating and Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (cleaned up) (internal quotation omitted)).

[2] As discussed, *infra*, the Amended Complaint names two additional Defendants – Dannie Tillotson Hayden and Robyn Pendleton Carter – neither of whom have been served to date. *See generally* Am. Compl., ECF No. 23. Accordingly, the Court limits its discussion to Defendants Concert Health, Johny, and Tolone-Smiley.

at 3. On February 25, 2025, Plaintiff received a positive performance review from Concert Health's human resources department. *Id*. The following day, Plaintiff filed a complaint against Ms. Tolone-Smiley for "harassment, unwanted interaction, [and an] inappropriate comment." *Id*. Plaintiff was thereafter terminated by Ms. Johny and other staff. *Id*. at 4.

Following her termination, Plaintiff reported her termination to human resources as unethical, retaliatory, and connected to her complaints. *Id*. On March 13, 2025, Plaintiff received notification from "multiple behavioral health networks" that a negative inquiry had been made in relation to the National Practitioner Data Bank ("NPDB"). *Id*. Plaintiff alleges that Defendant Hayden made false reports to the NPDB accusing Plaintiff of wrongdoing and that Defendants contacted external licensing bodies in violation of confidentiality requirements. *Id*. Ms. Tolone-Smiley subsequently became licensed in Connecticut and began working with an organization with which Plaintiff had professional ties. *Id*. Plaintiff alleges that Ms. Tolone-Smiley used her position to "interfere with Plaintiff's credentialing and to block her from employment opportunities within local traditional therapy networks." *Id*. Plaintiff later obtained her personnel file which contained no evidence of fraud on her part. *Id*.

**Procedural History**

Plaintiff filed the Complaint against Defendants on October 22, 2025. *See generally* Compl., ECF No. 1. Plaintiff filed an Amended Complaint on December 10, 2025. *See generally* Am. Compl., ECF No. 23. The Amended Complaint asserts nine causes of action: (I) Title VII retaliation, 42 U.S.C. § 2000e *et seq*.; (II) retaliation and interference under 42 U.S.C. § 1981; (III) due process violations under 42 U.S.C. § 1983; (IV) stigma-plus defamation under 42 U.S.C. § 1983; (V) NPDB misuse in violation of the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. §§ 11131 *et seq*.; (VI) violations of the peer-review process under the HCQIA, 42 U.S.C.

§§ 11101–52; (VII) interference with employment;[3] (VIII) invasion of privacy in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.; (IX) and antitrust violations. Am. Compl., ECF No. 23. Plaintiff seeks compensatory damages in the range of $600,000 to $1,500,000, punitive damages, treble damages, declaratory relief stating that Defendants violated Plaintiff's rights under federal law, injunctive relief removing the allegedly false NPDB report and prohibiting further retaliation, lost wages in the amount of $80,000, prejudgment and postjudgment interest, costs, and any other relief the Court deems proper.[4] *Id*. at 9–10.

To date, named Defendants Dannie Tillotson Hayden and Robyn Pendleton Carter have not been served. Although Plaintiff has abandoned efforts to serve Ms. Tillotson Hayden,[5] Plaintiff has made numerous attempts to serve Ms. Pendleton Carter without success and presently seeks to effectuate alternative service on Ms. Pendleton Carter. *See* Mot. for Service by Publication, ECF No. 35; Order, ECF No. 36; Mot. for Service by Email, ECF No. 45; Order, ECF No. 52; Summons Returned Unexecuted, ECF Nos. 55–58, 60; Mot. for Service by Email, ECF No. 62; Supp. ECF No. 66. The Motion for Service by Email filed on May 11, 2026 remains pending and will be taken up in due course with regard to Ms. Pendleton Carter. *See* ECF No. 62.

---

[3] As discussed *infra*, the genesis of this cause of action is unclear.

[4] Plaintiff also seeks attorney's fees in the event of appointed or retained counsel. However, the Court denied, *see* Ord., ECF No. 51, Plaintiff's Motion to Appoint Counsel, ECF No. 44, and Plaintiff appears *pro se*, thus rendering the relief sought inapplicable, at least at this juncture.

[5] During the telephonic status conference held on June 22, 2026, *see* Min. Entry, ECF No. 64, the Court noted that Plaintiff had previously filed motions to effectuate alternative service on both Ms. Tillotson Hayden and Ms. Pendleton Carter, see ECF Nos. 35, 45, but the pending motion, ECF No. 62, addresses only Ms. Pendleton Carter. The Court directed supplemental briefing on the issue of service by email, *see* ECF No. 65, and indicated that Plaintiff could renew her motion for alternative service on Ms. Tillotson Hayden if she wished to do so, but no renewed motion was filed and the supplemental briefing addressed Ms. Pendleton Carter only, *see* Supp., ECF No. 66. Rule 4(m) of the Federal Rules of Civil Procedure requires a Plaintiff to provide proof of service within 90 days of the filing of the complaint. Plaintiff has failed to comply with Rule 4(m) and nor has Plaintiff sought additional time within which to do so following the Court's denial of Plaintiff's Motion for Service by Email, ECF No. 45, and *sua sponte* extension of time to effectuate service, ECF No. 52. Rule 4 contemplates dismissal if its requirements are not met. Fed R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). Accordingly, Defendant Dannie Tillotson Hayden is terminated.

On December 22, 2025, Concert Health filed its Motion to Dismiss. *See* ECF No. 26. Plaintiff filed an objection, ECF No. 29, and Concert Health filed a Reply, ECF No. 34.[6] On January 5, 2026, Ms. Tolone-Smiley filed her Motion to Dismiss. ECF No. 28. Plaintiff objected, ECF No. 41, and Ms. Tolone-Smiley filed a Reply, ECF No. 43. On January 16, 2026, Ms. Johny filed her Motion to Dismiss. ECF No. 30. Plaintiff objected, ECF No. 40, and Ms. Johny filed a Reply, ECF No. 42. Plaintiff filed sur-replies to Ms. Tolone-Smiley and Ms. Johny's replies. See ECF Nos. 50, 53. The Court issued an order indicating that it would consider the unauthorized sur-replies given Plaintiff's *pro se* status, but that further unauthorized sur-replies would not be considered if filed without leave of Court. Ord., ECF No. 54.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). If a complaint only "pleads facts that are 'merely consistent with' a defendant's liability," it does not establish a plaintiff's plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "formulaic recitation[s] of

---

[6] Plaintiff also filed a second objection, ECF No. 33, to Concert Health's Motion to Dismiss on the basis that it was untimely. The Court discerns that Plaintiff misconstrued Concert Health's Notice to Self-Represented Litigant, ECF No. 32, as an Amended Motion to Dismiss. However, as explained in Concert Health's Reply, ECF No. 34, Concert Health had simply filed notice in compliance with the Court's Order at ECF No. 31, which noted Defendants' failure to comply with Local Rule 12(a) regarding Notice to Self-Represented Litigants. Concert Health's Motion to Dismiss was timely filed on December 22, 2025 and Defendants are now in compliance with Local Rule 12(a). *See* ECF No. 26; D. Conn. L. Civ. R. 12(a).

the elements" are not entitled to a presumption of truth. *Id*. (quoting *Twombly*, 550 U.S. at 555). Nevertheless, when reviewing a motion to dismiss, the Court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

Further, "[a] plaintiff bears the burden of showing that the court has personal jurisdiction over each defendant." *Carney v. Beracha*, 996 F. Supp. 2d 56, 60 (D. Conn. 2014) (citation omitted). "[H]owever, the showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (*per curiam*) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

> Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations. After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. At that point, the *prima facie* showing must be factually supported.

*Id*. at 84–85 (quoting *Ball*, 902 F.2d at 197).[7] Accordingly, Plaintiff's assertion of personal jurisdiction over the Defendants must be found in Plaintiff's allegations.

**Discussion**

Defendants move to dismiss the Amended Complaint under Rule 12(b)(6), each arguing the Amended Complaint "fail[s] to state claims upon which relief may be granted." Mots. to Dismiss, ECF Nos. 26 at 1, 28 at 1, 30 at 1. Defendants Tolone-Smiley and Johny further argue

---

[7] If, however, the Court determines that "the jurisdictional dispute is interwoven with the underlying merits of [the plaintiff's] suit[,]" then the "'Court must leave the jurisdictional issue for the trial," though it "may also deem it appropriate to make a preliminary finding on jurisdictional facts, subject to revision later in the proceedings or at trial.'" *Dorchester Fin. Secs.*, 722 F.3d at 87 (quoting *All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006)).

that this Court lacks personal jurisdiction over them. Mots. to Dismiss, ECF Nos. 28 at 1; 30 at 1. For the reasons set forth below, the Court agrees that Plaintiff has failed to state a claim against Defendant Concert Health and Plaintiff has failed to adequately allege that this Court has personal jurisdiction over Defendants Tolone-Smiley and Johny.

***Personal Jurisdiction***

Defendants Tolone-Smiley and Johny allege that this Court lacks personal jurisdiction over them because neither have taken any actions that would allow Connecticut's long-arm statute to reach them and nor do they have minimum contacts with the state of Connecticut so as to satisfy the requirements of due process. *See* Mots. to Dismiss, ECF Nos. 28-1 at 2–5; 30-1 at 2–5. Plaintiff responds that Ms. Tolone-Smiley invoked this Court's jurisdiction by interacting with Connecticut-based employees and Plaintiff's patients and causing harm in Connecticut. Opp'n to Tolone-Smiley Mot. to Dismiss, ECF No. 41 at 4. Regarding Ms. Johny, Plaintiff argues that there was sufficient supervisory conduct to invoke Connecticut's long arm statute because Ms. Johny supervised Connecticut employees, participated in Plaintiff's termination, and retaliated against Plaintiff, thereby causing injury in Connecticut. Opp'n to Johny Mot. to Dismiss, ECF No. 40 at 1–3. In reply, Defendants Tolone-Smiley and Johny maintain that Plaintiff has not met her burden of demonstrating personal jurisdiction over them. Tolone-Smiley Reply, ECF No. 43 at 2–3; Johny Reply, ECF No. 42 at 2–4. The Court agrees with Defendants.

"[P]ersonal jurisdiction is determined by the law of the state in which the district court sits." *Doe v. Ciolli*, 611 F. Supp. 2d 216, 220 (D. Conn. 2009) (citations omitted). "The first inquiry must be whether [Connecticut's] long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if [the Court] find[s] the statute to be applicable do[es it] reach the question whether it would offend due process to assert jurisdiction." *W. World Media,*

*LLC v. Ikamobile Ltd.*, 809 F. Supp. 2d 26, 30 (D. Conn. 2011) (quoting *Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.*, 460 A.2d 481, 484 (Conn. 1983) (brackets omitted)).

Connecticut's long-arm statute permits the exercise of personal jurisdiction over a nonresident individual who:

> in person or through an agent: (1) [t]ransacts any business within the state; (2) commits a tortious act within the state . . . ; (3) commits a tortious act outside the state causing injury to person or property within the state, . . . if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state."

Conn. Gen. Stat. § 52-59b(a).

Plaintiff summarily asserts that her allegations support long-arm jurisdiction under Subsections (a)(1), (a)(3) and (a)(5). Opp'n to Johny Mot. to Dismiss, ECF No. 40 at 2. The court disagrees.

The only *arguable* subsection at issue here is (a)(1).[8] "The term 'transacting business,' as used in § 52-59b(a)(1), 'is not broadly interpreted in Connecticut.'" *Vertrue Inc. v. Meshkin*, 429

[8] Subsection (a)(3) requires allegations of tortious conduct outside Connecticut causing injury inside Connecticut. *See Amerbelle Corp. v. Hommell*, 272 F. Supp. 2d 189, 195 (D. Conn. 2003). And of course, the claims must arise out of such tortious conduct. *See*, *e.g.*, *Connecticut Artcraft Corp. v. Smith*, 574 F. Supp. 626, 629–30 (D. Conn. 1983) (addressing the "critical events" test to establish personal jurisdiction under subsection (a)(3)). Significant here, Subsection (a)(3) "applies only if the individual involved 'regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state,' subsection (a)(3)(A), or 'expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce,' subsection (a)(3)(B)." *Drupals v. Mabey*, No. 3:13-cv-00404 CSH, 2014 WL 3696374, at *5 (D. Conn. July 23, 2014). There are simply no allegations regarding either individual defendant that would implicate Subsection (a)(3).

Subsection (a)(5) requires that the claims arise from the defendants' use of a computer *within the State*. *See Simonson v. Olejniczak*, No. 3:21-cv-01118 (SALM), 2022 WL 6509428, at *7 (D. Conn. May 17, 2022), *aff'd*, No. 22-1219, 2023 WL 2941521 (2d Cir. Apr. 14, 2023); *Adv. Improvements, LLC v. Londregan*, No. KNLCV186035394, 2019 WL 3526435, at *5–6 (Conn. Super. Ct. July 9, 2019). As discussed above, Plaintiff's allegations do not implicate Subsection (a)(5).

F. Supp. 2d 479, 489–90 (D. Conn. 2006) (citations omitted). "A 'nonresident individual who has not entered this state physically nevertheless may be subject to jurisdiction in this state under § 52-59b(a)(1) if that individual has 'invoked the benefits and protection of Connecticut's laws' by virtue of his or her 'purposeful Connecticut related activity.''" *Kaufman LLC v. Feinberg*, No. 3:17-cv-958 (VAB), 2020 WL 509765, at *9 (D. Conn. Jan. 31, 2020) (quoting *Ryan v. Cerullo*, 120, 918 A.2d 867, 874–75 (Conn. 2007)). "[A] single purposeful business transaction" can fall within the ambit of "transacts any business." *Ryan*, 918 A.2d at 874 (citations omitted) (quoting *Zartolas v. Nisenfield*, 440 A.2d 179, 181 (Conn. 1981)). Courts must "examine the nature and quality, rather than the amount of Connecticut contacts to determine whether there was purposeful activity." *Confectionary Arts Int'l, LLC v. CK Prod. LLC*, No. 3:16-cv-2015 (JBA), 2018 WL 1141357, at *4 (D. Conn. Mar. 1, 2018) (quotation marks and citation omitted).

Generally, "the transmission of communications between a non-resident defendant and a party within the jurisdiction does not, by itself, constitute the transaction of business in this state." *Vitale v. Catanese*, No. 3:11-cv-1831 (MPS), 2013 WL 3992394, at *3 (D. Conn. Aug. 2, 2013) (collecting cases). So too is "the negotiation or existence of a contract, standing alone, . . . insufficient to exercise personal jurisdiction over a defendant." *HSQD, LLC v. Morinville*, No. 3:11-cv-1225 (WWE) 2012 WL 2088698, at *3 (D. Conn. June 8, 2012) (citations omitted).

In addition to requiring that the nonresident individual have transacted business in the state, Section 52-59b(a)(1) embodies a second requirement — that the cause of action have arisen from the defendant's business activity in Connecticut. *See Ryan*, 918 A.2d at 875–76. "In determining whether the [plaintiff's] cause of action arose from the defendants' transaction of business within this state[, courts] do not resort to a rigid formula. Rather, [they] balance considerations of public

policy, common sense, and the chronology and geography of the relevant factors." *Id*. at 876 (quoting *Zartolas*, 440 A.2d at 182).

***Ms. Tolone-Smiley***

Ms. Tolone-Smiley is a resident of Texas and during the relevant time, was an employee of Concert Health. *See* Tolone-Smiley Mot. to Dismiss, ECF No. 28-1 at 3. The allegations against Ms. Tolone-Smiley in the Amended Complaint are limited and largely conclusory. She alleges that: (1) Ms. Tolone-Smiley became licensed in Connecticut *after* Plaintiff's termination, Am. Compl., ECF No. 23 at 2; (2) Plaintiff filed a complaint against Ms. Tolone-Smiley for "harassment, unwanted interaction, [and an] inappropriate comment[,]" *id*. at 3; (3) Ms. Tolone-Smiley unlawfully interfered with Plaintiff's credentialing employment opportunities following Plaintiff's termination, *id*. at 4; and (4) Ms. Tolone-Smiley unlawfully accessed Plaintiff's computer, altered documentation, and interfered with Plaintiff's records, *id*. at 8–9. There is no allegation that Ms. Tolone-Smiley was ever present in Connecticut during Plaintiff's employment with Concert Health.

These unsupported conclusory assertions are insufficient to establish Connecticut's long-arm jurisdiction over Ms. Tolone-Smiley. Aside from becoming licensed in Connecticut after Plaintiff was terminated, the allegations do not establish that Ms. Tolone-Smiley had any connection to Connecticut aside from her communications with Plaintiff in the employment setting. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.*, 296 F. Supp. 2d 234, 239 (D. Conn. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). And Plaintiff's conclusory allegation that Ms. Tolone-Smiley "unlawfully accessed" Plaintiff's computer does not satisfy her pleading requirements under subsection (a)(5). Am.

Compl., ECF No. 23 at 8. Indeed, Plaintiff acknowledges that the computer belonged to Concert Health, was locked upon her termination and subsequently returned by Plaintiff to Concert Health. *Id*. at 4.

Plaintiff has not met her burden of plausibly alleging personal jurisdiction over Ms. Tolone-Smiley. *See Callahan v. Wisdom*, No. 3:19-cv-00350 (KAD), 2020 WL 2061882, at *6 (D. Conn. Apr. 29, 2020) (finding the Court lacked jurisdiction over an Illinois resident even though he was in frequent communication with Plaintiff in Connecticut and had a supervisory/oversight role in Plaintiff's consulting work in Connecticut); *Liebert v. Jones*, 3:20-cv-00970 (VAB), 2020 WL 7645432, at *1, 5 (D. Conn. Dec. 23, 2020) (Plaintiff's presence in Connecticut and Defendant's communications with Plaintiff in Connecticut were inadequate to establish personal jurisdiction over the defendant.). Plaintiff's efforts to distinguish her allegations from those addressed in *Wisdom* are unavailing. Even construing Plaintiff's allegations broadly and liberally, as a factual matter, she alleges no more than verbal interactions with Ms. Tolone-Smiley arising in the context of Plaintiff's employment while Plaintiff was in Connecticut.[9] The Court, therefore, does not reach the due process "minimum contacts" inquiry and concludes that claims against Ms. Tolone-Smiley must be dismissed.

***Ms. Johny***

The allegations regarding Ms. Johny are even less compelling and the argument for personal jurisdiction over Ms. Johny is even more attenuated. Ms. Johny is a resident of Florida and during the relevant time was alleged to be Plaintiff's supervisor at Concert Health. *See* Johny

[9] If Plaintiff's allegations were sufficient to invoke the long-arm statute, any remote worker, in any state, could be sued in Connecticut if their work resulted in communications with other remote workers who happen to be in Connecticut. Not only is this inconsistent with Connecticut's long-arm statute, it most certainly would offend due process. *See*, *e.g.*, *Ryan*, 918 A.2d at 873 n.12 ("The federal due process clause permits state courts to exercise in personam jurisdiction over a nonresident corporate [or individual] defendant that has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (quoting *Knipple v. Viking Commc'ns, Ltd.*, 674 A.2d 426, 429 n.6 (Conn. 1996)).

Mot. to Dismiss, ECF No. 30-1 at 3; Am. Compl., ECF No. 23 at 6. Per the Amended Complaint, the only allegations against Ms. Johny are that Ms. Johny feigned neutrality in her interactions with Plaintiff and then abruptly terminated Plaintiff on February 27, 2025. Am. Compl., ECF No. 23 at 4, 6. For the reasons discussed, *supra*, these allegations do not support any circumstance contemplated in Conn. Gen. Stat. § 52-59b(a) that would allow Plaintiff to invoke Connecticut's long-arm statute over Ms. Johny. *See* Conn. Gen. Stat. § 52-59b(a); *see also Walden*, 571 U.S. at 285. Accordingly, the Court does not reach the due process "minimum contacts" inquiry and the claims against Ms. Johny are dismissed.

The analysis to follow, therefore, applies only to Concert Health.[10]

***Count I — Title VII Retaliation***

Plaintiff first asserts a retaliation claim under Title VII. As a preliminary matter, the Court finds that Plaintiff has not exhausted her administrative remedies. Although it is unclear from the record when Plaintiff filed administrative charges with the EEOC, it is clear that she had not been issued a right-to-sue letter before commencing this action. *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006). A plaintiff must first obtain[] a right-to-sue letter . . . before elevating th[eir] dispute to federal court." *Hansen v. Jones Lang LaSalle Ams., Inc.*, 103 F. Supp. 3d 221, 224 (D. Conn. 2015); *see also Dragon v. Connecticut*, 2014 WL 6633070, at *2 (D. Conn. 2014) ("A plaintiff's Title VII claims may be dismissed under Rule 12(b)(6) when the plaintiff has failed to adequately plead and attach to her complaint a right-to-sue letter showing that she has exhausted her administrative remedies."); *Spencer v. Duncaster, Inc.*, 54 F.Supp.3d 171, 175 (D. Conn. 2014) (noting that "the exhaustion of administrative remedies, including obtaining an EEOC right-to-sue letter, is a precondition to bringing a Title VII

[10] The Rule 12(b)(6) analysis would have equal application to the claims brought against Ms. Tolone-Smiley and Ms. Johny. Indeed, both defendants incorporated and joined in the arguments advanced by Concert Health.

claim in federal court . . . and . . . a suit initiated by a plaintiff who has not obtained an EEOC right-to-sue letter might well be subject to dismissal upon a proper motion" (internal citation and quotation marks omitted)). The EEOC issued Plaintiff a right-to-sue letter on April 30, 2026, *see* Not., ECF No. 61, approximately six months after she initiated this action. Therefore, it is manifest that Plaintiff had not exhausted her administrative remedies *prior* to filing her Complaint in this Court. Regardless, the claim also fails on the merits.

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 41 U.S.C. § 2000e-3(a). Retaliation claims under Title VII are analyzed using the *McDonnell Douglas* burden-shifting framework. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); *see also* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973). To establish a *prima facie* case of retaliation, a plaintiff must show: (1) participation in a protected activity; (2) defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *See Hicks*, 593 F.3d at 164 (citation omitted). The plaintiff's burden at the first step is *de minimis*. *Id*. Temporal proximity between a protected activity and an adverse employment action can establish a *prima facie* case of retaliation. *See*, *e.g.*, *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932 (2d Cir. 2010); *Pistello v. Bd. of Educ., Canastota Central Sch. Dist.*, 808 F. App'x 19, 22–23 (2d Cir. 2020).

If the plaintiff sustains this initial burden, "a presumption of retaliation arises." *Hicks*, 593 F.3d at 164 (citation and internal quotation marks omitted). The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id*. (citation and internal

quotation marks omitted). If the defendant provides such an explanation, "the presumption of retaliation dissipates," *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005), and the plaintiff must prove "that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

The Court has reviewed the Amended Complaint for factual allegations which would support her Title VII retaliation claim, to include allegations which would permit the inference that Concert Health's conduct derived from retaliatory animus. Plaintiff's retaliation claim states: "Plaintiff engaged in protected activity by reporting misconduct/harassment and misconduct. Defendants knew of this complaint and retaliated within 24 hours by terminating Plaintiff." Am. Compl., ECF No. 23 at 6. The complaint to which she refers is the allegation that "[o]n February 26, 2025, Plaintiff filed a protected complaint against [Ms. Tolone-Smiley] for harassment, unwanted interaction, inappropriate comment made above was reported to Associate director Robyn Carter Pendleton." *Id*. at 3. The Court cannot locate any allegation of any "inappropriate comment made above." *Id*. And having no information as to the nature of the complaint, the Court cannot infer that her complaint against [Ms. Tolone-Smiley] was "protected activity" as contemplated under Title VII. "Protected activity [under Title VII] includes any opposition to an employment practice 'so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated [Title VII]].'" *Trotter v. Nat'l Football League*, 737 F. Supp. 3d 172, 182 (S.D.N.Y. 2024) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)).[11] And without being able to assess

[11] The Complaint also alleges that on February 21, 2025, Plaintiff "submitted an incident report concerning unethical conduct, improper handling of patient records, and suspected tampering of Plaintiff's files." Am. Compl., ECF No. 23 at 3. Although it is not entirely clear that the retaliation claim includes this "incident report," even if intended to be included, it remains unclear, as a factual matter, whether this report could be considered protected activity under Title VII.

whether the complaint was "protected activity" there is no basis upon which to infer a retaliatory animus for her termination. While the Amended Complaint contains conclusory accusations of retaliatory animus, it is simply devoid of facts alleging either "protected activity" or facts from which retaliatory animus might be inferred. Therefore, because Plaintiff has not plausibly alleged even a *prima facie* case of retaliation, the Motion to Dismiss as to Count I is GRANTED. The dismissal is without prejudice to repleading if Plaintiff believes she can allege facts that address the deficiencies identified herein.

***Count II — Section 1981 Retaliation***

Plaintiff also asserts a retaliation claim under Section 1981, 42 U.S.C. § 1981, alleging Defendants "interfered with Plaintiff's contractual opportunities by issuing a false NPDB report, blocking credentialing, and disseminating defamatory statements." Am. Compl., ECF No. 23 at 6. A Section 1981 retaliation claim is analyzed under the same principles as a Title VII retaliation claim. *Trotter*, 737 F.Supp.3d at 181. As discussed above, plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 315–16 (2d Cir. 2015).

The Complaint is even less clear as to the basis for Plaintiff's retaliation claim under Section 1981. Accordingly, for the same reasons Plaintiff's Title VII retaliation claims are not plausible alleged, her Section 1981 retaliation claim also fails. Therefore, the Motion to Dismiss as to Count II is GRANTED. The dismissal is without prejudice to repleading if Plaintiff believes she can allege facts that address the deficiencies identified herein.

***Counts III and IV — 42 U.S.C. § 1983 Stigma Plus Due Process Violation***

Counts III and IV asserts a stigma-plus Fourteenth Amendment due process violations for publishing "false stigmatizing allegations of fraud that destroyed Plaintiff's ability to work in the profession." Am. Compl., ECF No. 23 at 6. Title 42 U.S.C. § 1983, provides in pertinent part: "Every person who, under color of any statute . . . of any State, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Accordingly, claims pursuant to § 1983 may only proceed against state actors, whether those actors are government officials acting under the color of state law or private individuals acting as instruments of the state. *See*, *e.g.*, *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

Concert Health is clearly a private entity. There is no allegation that Concert Health is a "state actor." "In order to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be 'fairly attributable' to the state." *Id*. (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). "Conduct that is ostensibly private can be fairly attributed to the state only if there is 'such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Id.* (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)) (further quotations omitted). While there are a range of theories by which private conduct may be attributed to the state, *see id.*, Plaintiff invokes none of them. Indeed, Plaintiff does not respond to this argument by Concert Health. The motion to dismiss as to Counts III and IV is GRANTED.

***Counts V and VI — HCQIA Violations***

Counts V and VI of the Amended Complaint assert causes of action under the HCQIA. 42 U.S.C. §§ 11131 *et seq*. Plaintiff asserts that Defendants "were not engaged in any valid HCQIA peer-review process" and submitted an unsupported NPDB report, which constitute misuse of the HCQIA and NPDB reporting process. Am. Compl., ECF No. 23 at 8. However, the HCQIA does not provide for a private cause of action. In fact, "a myriad of courts have found that the 'HCQIA does not provide a private cause of action through which a physician can seek relief for violations of that statute.'" *Offor v. Mercy Med. Ctr.*, 167 F. Supp. 3d 414, 443 (E.D.N.Y. 2016) (quoting *Tabrizi v. Faxton-St. Luke's Healthcare*, No. 6:10-CV-1475, 2011 WL 6842989, at *3 (N.D.N.Y. Dec. 29, 2011)), *aff'd in part*, *vacated in part*, *remanded*, 676 F. App'x 51 (2d Cir. 2017) ("The district court cited multiple decisions for the proposition that the HCQIA does not afford a private right of action, and Offor does not contest that proposition on appeal. We therefore do not consider the question and affirm the district court's dismissal.")). *See also Singh v. Blue Cross/Blue Shield of Massachusetts, Inc.*, 308 F.3d 25, 45 n. 18 (1st Cir.2002) ("Dr. Singh also claims that Blue Cross violated his rights by failing to satisfy the requirements of the HCQIA. However, the HCQIA does not create a private cause of action."); *Hancock v. Blue Cross-Blue Shield of Kansas, Inc.*, 21 F.3d 373, 375 (10th Cir.1994) ("Since the court concludes that the HCQIA was not enacted to benefit physicians subject to peer review, such as plaintiff, plaintiff cannot persuade the court that an implied cause of action exists for him under the HCQIA."); *Zoher v. NHC Healthcare Sys., Inc.*, No. 2:11-CV-00086-FTM-29, 2011 WL 5525338, at *2 (M.D. Fla. Nov. 14, 2011) ("The Eleventh Circuit, as well as other circuits, has held that there is no private cause of action under HCQIA to a physician in connection with the peer review process.") (citing *Morris v. Emory Clinic, Inc.*, 402

F.3d 1076, 1083 (11th Cir.2005)). Plaintiff does not address this argument or this authority. The Motion to Dismiss as to Counts V and VI is GRANTED.

***Count VII — Federal Interference with Employment***

Plaintiff's seventh count is a claim for "federal interference with employment." Am. Compl., ECF No. 23 at 8. The Court is unaware of any such cause of action. The claim appears to be related to the allegations that Defendants filed false NPDB reports that negatively impacted Plaintiff's future employment opportunities. *Id*. However, the genesis of and the authority for this cause of action is utterly unclear. Concert Health posited in its Motion to Dismiss that this claim appears duplicative of other claims in the Amended Complaint — particularly the Title VII claim — but even that is unclear. Concert Health Mot. to Dismiss, ECF No. 26-1 at 8. And although Plaintiff filed a reply and a sur-reply, she did not provide any clarity as to the nature of and authority for this claim. Accordingly, absent same, the Court concludes Count VII must be dismissed for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6); *see also Twombly*, 550 U.S. at 545 ("a plaintiff's obligation to provide the 'grounds' of her 'entitlement to relief' requires more than labels and conclusions) (cleaned up). The Motion to Dismiss as to Count VII is GRANTED.

***Count VIII — Invasion of Privacy***

Plaintiff further asserts a violation of the CFAA insofar as she alleges Defendants "accessed Plaintiff's computer systems without continued permission and deleted or altered her filed and notes." Am. Compl., ECF No. 23 at 9. The Amended Complaint refers to "Defendants" in the aggregate, but focuses the alleged conduct creating the basis for this claim on Ms. Pendleton Carter, who has not been served, and Ms. Tolone-Smiley, over whom this Court lacks personal jurisdiction. *Id*. Construing the pleadings liberally, the Court considers the allegations as they pertain to Concert Health. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (finding that *pro se*

filings are "to be liberally construed"). The CFAA provides that "[w]hoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer if the conduct involved an interstate or foreign communication . . . shall be punished as provided in subsection (c) of this Act." 18 U.S.C. § 1030(a)(2)(C).

The "CFAA is a primarily a criminal statute, but it provides for a private cause of action where a plaintiff meets certain requirements." *Modis, Inc. v. Bardelli*, 531 F. Supp. 2d 314, 318 (D. Conn. 2008) (citing 18 U.S.C. § 1030(g). To succeed on a CFAA claim, Plaintiff's allegations must "establish the requisite elements: 1) that [D]efendant[s'] . . . conduct involved an interstate or foreign communication; 2) that [Defendants] used a 'protected computer' in that it was used for interstate or foreign commerce or communication; 3) that [Defendants] used [P]laintiff's computer to obtain information without authorization or exceeded her authorized access; and 4) that [P]laintiff suffered losses recoverable under the Act." *Id*.

Plaintiff's allegations plainly do not establish a CFAA claim. Critically, Plaintiff's allegations make clear that the computer Plaintiff alleges was unlawfully accessed was owned by Concert Health. Her allegations do not establish that Defendants accessed the computer without authorization or exceeded authorization. *See id*. Furthermore, she has not asserted any recoverable losses. *Id*. Therefore, Plaintiff has failed to state a plausible CFAA claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The Motion to Dismiss Count VIII is GRANTED.

***Count IX — Antitrust Violations***

Finally, Plaintiff asserts a violation of federal antitrust laws. The Amended Complaint again refers to "Defendants" in the aggregate, but focuses the alleged conduct pertains to Ms.

Pendleton Carter and Ms. Tolone-Smiley. Am. Compl., ECF No. 23 at 9. To the extent that such claims are directed at Concert Health, they are analyzed below.

"To satisfy antitrust standing at the pleading stage a plaintiff must plausibly allege two things: (1) that it suffered a special kind of antitrust injury, and (2) that it is a suitable plaintiff to pursue the alleged antitrust violations and thus is an efficient enforce' of the antitrust laws." *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 62 (2d Cir. 2019) (quoting *Gatt Commc'ns Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 76 (2d Cir. 2013) (internal quotation marks omitted)). The Second Circuit has "established a three-part test for determining whether the plaintiff has alleged an antitrust injury: (1) the court must identify the practice complained of and the reasons such a practice is or might be anticompetitive[;] (2) the court must identify the actual injury the plaintiff alleges, which requires [it] to look to the ways in which the plaintiff claims it is in a worse position as a consequence of the defendant's conduct[;] and (3) the court compares the anticompetitive effect of the specific practice at issue to the actual injury the plaintiff alleges." *Id.* at 62–63 (internal quotation marks, citations, and alterations omitted). As to the second requirement, "[a] four-factor test is employed to determine whether an antitrust plaintiff is an efficient enforcer," in which the Court "must evaluate: (1) 'the directness or indirectness of the asserted injury,' (2) 'the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement,' (3) 'the speculativeness of the alleged injury,' and (4) 'the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries.'" *Id.* at 65 (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 443 (2d Cir. 2006)).

There is simply no reading of Plaintiff's Amended Complaint that includes a plausibly alleged antitrust violation. Plaintiff makes only broad and conclusory allegations that Defendants

have committed antitrust violations. Am. Compl., ECF No. 23 at 9. In her opposition, she cites to no legal authority and provides no argument that she has suffered an antitrust injury or is even a suitable plaintiff to bring an antitrust claim. *IQ Dental Supply, Inc.*, 924 F.3d at 62. Accordingly, Plaintiff has not stated a plausible antitrust claim. The Motion to Dismiss as to Count IX is GRANTED.

**Conclusion**

For the foregoing reasons, Defendants' Motions to Dismiss, ECF Nos. 26, 28, 30, are **GRANTED**. Counts I (Title VII Retaliation) and II (§ 1981 Retaliation) as to Concert Health are **DISMISSED without prejudice** to repleading. If Plaintiff wishes to pursue these claims, she must file an Amended Complaint that addresses the deficiencies identified herein by **September 17, 2026**. If Plaintiff fails to file an Amended Complaint by **September 17, 2026**, the Clerk of the Court is respectfully directed terminate Defendant Concert Health on **September 18, 2026**. Counts III through IX are **DISMISSED with prejudice** as repleading would be futile for the reasons discussed herein. *See Grasso v. Donnelly-Schoffstall*, No. 21-1021, 2022 WL 728839, at *2 (2d Cir. Mar. 11, 2022) (affirming dismissal without prejudice where amendment would be futile (citing *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006))). The Clerk of the Court is respectfully requested to terminate Defendants Mecaila Tolone-Smiley, Gheetu Johny and Dannie Tillotson Hayden.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of August 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE